**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-12412

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

JEFFREY RYAN CLARK,

RICHARD DEWISE,

OTIS SANDERS, JR.,

*Defendants-Appellants.*

————————————

Appeal from the United States District Court

for the Southern District of Alabama

D.C. Docket No. 1:23-cr-00111-KD-MU-12

————————————

Before ROSENBAUM, NEWSOM, and BRASHER, Circuit Judges.

PER CURIAM:

Jeffrey Clark, Richard Dewise, and Otis Sanders, Jr., appeal their convictions for drug conspiracy and distribution offenses. Clark appeals his sentence of 120 months' imprisonment, and Clark and Dewise appeal the conditions of their supervised release. After careful review of the record and the parties' briefs, we affirm the defendants' convictions and Clark's 120-month sentence. We vacate the conditions of supervised release for Clark and Dewise and remand for limited resentencing.

## I.

A superseding indictment charged Clark, Dewise, and Sanders, along with numerous others, with conspiracy to distribute methamphetamine and with the distribution of cocaine or methamphetamine on various occasions. Clark and Sanders were also charged with gun crimes. Clark, Dewise, and Sanders proceeded to trial in April 2024.

### A.

The government's evidence at trial showed that Sanders operated a drug distribution conspiracy, obtaining cocaine and methamphetamine from Texas for distribution in Alabama and Mississippi. Sanders sometimes had other individuals transport drugs and money for him, including Clark. Sanders also supplied methamphetamine to lower-level distributors, including Dewise, sometimes up front.

*B.*

After the government presented its case, Defendants moved for judgment of acquittal.  As relevant here, Dewise challenged the sufficiency of the evidence for Count 19, which charged him with possessing with intent to distribute more than 50 grams of methamphetamine (actual) on March 20, 2023.  Sanders, for his part, argued that there was insufficient evidence to prove a conspiracy or any of the substantive offenses.  He also sought judgment of acquittal on the substantive offenses "on the basis that these are all *Pinkerton* counts."  The district court disagreed, stating that only Count 4 was based on *Pinkerton*,[1] while the remaining counts were for "aiding and abetting."  The court ultimately denied the motions for judgment of acquittal on all counts except Counts 14, 15, and 20 as to Sanders.

During the conference on jury instructions, Sanders objected to the proposed *Pinkerton* language for Count 4, asserting that *Pinkerton* liability was unconstitutional.  The district court overruled the objection.  The defendants rested, and the court denied their renewed motions for judgment of acquittal.  Later, the

---

[1] Under *Pinkerton v. United States*, 328 U.S. 640 (1946), "[e]ach party to a continuing conspiracy may be vicariously liable for substantive criminal offenses committed by a co-conspirator during the course and in the furtherance of the conspiracy, notwithstanding the party's non-participation in the offenses or lack of knowledge thereof." *United States v. Mothersill*, 87 F.3d 1214, 1218 (11th Cir. 1996).

court overruled Sanders's objections to the instructions on Count 4.

As the government made its closing argument to the jury, Sanders interjected, "All these lies. We are sitting here for the week listening to the lies." The court told Sanders to come to the bench. He replied, "Jesus." At the ensuing bench conference, Sanders accused the prosecutor of coercing witnesses to lie. The court responded that the prosecutor was doing her job, pleading with Sanders to sit down and be quiet or the "marshals are going to have to take you out of here." When the government moved to strike Sanders's comments, the court directed the government to "carry on" with its argument.

Clark moved for a mistrial based on Sanders's "outburst," claiming that it was prejudicial for Clark as a defendant sitting at the same table and charged with the same conspiracy as Sanders. Dewise joined in the motion. Sanders purported to join as well. The district court denied the mistrial motion.

The jury found Clark guilty of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine, in violation of 21 U.S.C. § 846 (Count 1), and possession of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) (Count 18). Clark was acquitted of three other § 841(a)(1) offenses (Counts 16, 20, and 21); possession of a firearm in relation to a drug-trafficking felony, in violation of 18 U.S.C. § 924(c)(1)(A) (Count 25); and possession of an unregistered firearm, in violation of 26 U.S.C. § 5861(d) (Count 26).

The jury found Dewise guilty of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine (Count 1), and three counts of possession with intent to distribute 50 grams or more of methamphetamine, in violation of § 841(a)(1) (Counts 9, 10, and 19).

The jury found Sanders guilty of conspiracy to possess with intent to distribute 50 grams or more of methamphetamine (Count 1), and eleven counts of violating § 841(a)(1) (Counts 2, 3, 6, 7, 9, 10, 12, 13, 17, 18, and 19), mostly involving 50 grams or more of methamphetamine. Sanders was acquitted of possession of a firearm in relation to a drug-trafficking felony, in violation of § 924(c)(1)(A) (Count 4).

## C.

At sentencing in July 2023, Clark objected to the amount of methamphetamine attributed to him in his presentence investigation report ("PSR"). He argued that it was based on acquitted conduct and that some methamphetamine had not been analyzed for purity. The district court sustained the objections in part. It found that Clark was responsible for 77.3 grams of methamphetamine (actual) and two kilograms of a methamphetamine mixture, for a total of 5,546 kilograms of converted drug weight.

The court calculated a base offense level of 32 and granted a two-level minor-role reduction, for a resulting guideline range of 97 to 121 months. The court observed that the safety valve, *see* 18 U.S.C. § 3553(e), did not apply because Clark had not cooperated, so the court imposed a total sentence of 120 months in prison, the

minimum sentence required by Count 1.  The court also ordered Clark to serve a term of five years' supervised release.

The district court listed certain conditions of Clark's supervised release, including that he shall not commit any other crimes; that he was prohibited from possessing a firearm, dangerous device, or controlled substance; that he was subject to drug testing and drug treatment; and that he was subject to searches of his property or person upon reasonable suspicion.

The district court entered judgment against Clark on July 29, 2024.  Regarding Clark's term of supervised release, the written judgment listed three "special" conditions, four "mandatory" conditions, and thirteen "standard" conditions.  The court did not reference or address the standard conditions during the sentencing hearing.  Nonetheless, Clark's PSR included a section stating that "[t]he defendant is hereby put on notice that the Court will impose the following standard conditions at the sentencing hearing," and listing fourteen standard conditions that are substantially similar to the standard conditions listed in Clark's judgment, but not identical.

## D.

The district court sentenced Dewise to a total of 150 months of imprisonment, plus five years of supervised release.  The court advised Dewise of essentially the same conditions of supervised release as Clark.  Dewise's written judgment included the same conditions of supervised release as Clark's, including thirteen standard

24-12412                Opinion of the Court                7

conditions that the district court did not reference at sentencing. Clark, Dewise, and Sanders all appeal.[2]

## II.

We start with evidentiary sufficiency. We review de novo whether sufficient evidence supports a conviction. *United States v. Williams*, 865 F.3d 1328, 1337 (11th Cir. 2017). In doing so, we view the evidence "in the light most favorable to the jury's verdict, here drawing all reasonable inferences and making all credibility choices in the government's favor." *Id.* We won't reverse a conviction if "any reasonable construction of the evidence . . . would have allowed the jury to find the defendant guilty beyond a reasonable doubt." *United States v. Clay*, 832 F.3d 1259, 1294 (11th Cir. 2016) (quotation marks omitted).

Defendants' convictions are based on 21 U.S.C. §§ 841(a)(1) and 846, and 18 U.S.C. § 2. Section 841(a)(1) makes it unlawful for a person knowingly to distribute or possess with intent to distribute a controlled substance. 21 U.S.C. § 841(a)(1). "[A] person violates § 841(a) merely by knowingly possessing with intent to distribute a controlled substance." *United States v. Sanders*, 668 F.3d 1298, 1309 (11th Cir. 2012). The quantity of drugs involved may support a finding of intent to distribute. *United States v. Butler*, 117 F.4th 1309, 1321 (11th Cir. 2024).

---

[2] Sanders does not challenge his total sentence of 240 months of imprisonment or his five-year term of supervised release.

Possession can be "actual" or "constructive." *United States v. Leonard*, 138 F.3d 906, 909 (11th Cir. 1998). Actual possession refers to "physical possession of or personal dominion over the thing allegedly possessed," while constructive possession means "ownership, dominion, or control over an object itself or dominion or control over the premises or the vehicle in which the object is concealed." *Id.* But "mere presence in a car containing contraband is insufficient in itself to sustain a conviction for possession with intent to distribute." *Id.*

Section 846 makes it unlawful to attempt or conspire to commit a violation of § 841(a). 21 U.S.C. § 846. To sustain a conviction under § 846, the government must prove that "(1) there was an agreement between two or more people to violate § 841(a)(1); (2) the defendant knew about the agreement; and (3) the defendant voluntarily joined the agreement." *United States v. Colston*, 4 F.4th 1179, 1187 (11th Cir. 2021). "Agreements to enter into conspiracies can be shown by inferences from the conduct of the participants." *United States v. Johnson*, 889 F.2d 1032, 1035 (11th Cir. 1989).

The indictment and jury charge in this case also permitted the jury to determine guilt based on aiding-and-abetting liability. *See* 18 U.S.C. § 2. "[T]he aiding and abetting of another's actual or constructive possession could therefore support a conviction." *United States v. Brantley*, 733 F.2d 1429, 1434 (11th Cir. 1984). To establish guilt of aiding and abetting, "the government must prove that (1) the substantive offense was committed by someone; (2) the defendant committed an act which contributed to and furthered

the offense; and (3) the defendant intended to aid in its commission." *United States v. Buchanan*, 146 F.4th 1342, 1350 (11th Cir. 2025) (quotation marks omitted).

*A.*

Dewise argues that the district court erred in denying his motion for judgment of acquittal for lack of sufficient evidence to prove Count 19, which charged possession with intent to distribute 50 grams or more of methamphetamine on March 20, 2023. He argues that the government failed to establish actual or constructive possession because the evidence showed that he was simply a passenger in a vehicle in which drugs were found.

The evidence shows that Dewise and Sanders agreed to meet at a gas station on March 20, 2023, after exchanging messages in the preceding days. Monitoring Sanders's phone with a wiretap, law-enforcement officers set up surveillance of the meeting. They saw a man exit a Toyota Corolla, approach the vehicle in which Sanders had been seen, and then, after making contact, return to the Corolla. The officers tracked the Corolla into Alabama, where a traffic stop was conducted. Dewise was a passenger and one of the car's three occupants. The traffic stop revealed one kilogram of methamphetamine in the vehicle's trunk. The jury saw surveillance video from the gas station of a portion of the incident. After the traffic stop, Dewise called Sanders to report that law enforcement "took that bag."

Viewing the evidence in the light most favorable to the verdict, a reasonable jury could conclude that Dewise and Sanders arranged a drug transaction on March 20, 2023, and that Dewise obtained from Sanders the methamphetamine later found in the trunk of the Corolla. A jury therefore could conclude that Dewise physically possessed and exercised control over the methamphetamine. *See Leonard*, 138 F.3d at 909. Given the large quantity and the circumstances, the jury could also conclude that Dewise possessed the drugs with intent to distribute. *See Butler*, 117 F.4th at 1321.

Thus, even though the government's case was circumstantial, a "reasonable construction of the evidence" supported the jury's decision "to find the defendant guilty beyond a reasonable doubt. *Clay*, 832 F.3d at 1294; *see United States v. Doe*, 661 F.3d 550, 560 (11th Cir. 2011) ("The test for sufficiency of evidence is identical regardless of whether the evidence is direct or circumstantial, and no distinction is to be made between the weight given to either direct or circumstantial evidence.") (quotation another source). We therefore affirm Dewise's conviction on Count 19.

*B.*

Sanders challenges the sufficiency of the evidence to support his convictions. He claims that the government failed to prove beyond a reasonable doubt that he possessed with intent to distribute controlled substances. He asserts that the government failed to offer fingerprints or DNA evidence establishing his possession of the controlled substances, and that he was "never found in possession

of controlled substances by law enforcement—not on his person, not in his house, [and] not in his vehicle."

Sanders's argument is largely beside the point. The government did not have to prove actual possession, or offer direct evidence, so long as the evidence submitted to the jury was "sufficient to support either a constructive possession or an aiding and abetting theory as to each count." *United States v. Raffone*, 693 F.2d 1343, 1346 (11th Cir. 1982). Constructive possession may be established by proof that "various persons who were in actual possession of the [controlled substances] worked for the [defendant] and were under his control." *Id.*; *see United States v. Tunsil*, 672 F.2d 879, 882 (11th Cir. 1982) ("[C]onstructive possession may be shown by evidence of the defendant's control over a narcotics operation."). Similarly, the "mastermind" of a drug-distribution operation can aid and abet his subordinates by helping them carry out substantive distribution offenses. *Raffone*, 693 F.2d at 1347.

Here, the government presented ample circumstantial proof, including coconspirator testimony, that Sanders supplied or exercised control over the controlled substances at issue as the leader of a drug-distribution scheme. *See id.* Sanders fails to address why that evidence is insufficient to convict under a constructive-possession or aiding-and-abetting theory, either as a whole or with reference to a particular count. And we decline to undertake that review on our own. *See Coleman v. Hillsborough County*, 41 F.4th 1319, 1328 (11th Cir. 2022) (stating that courts are not required "to dig through the record in an effort to turn up facts that

might make [a party's] case for him").  The mere fact that Sanders may not have physically handled the controlled substances does not prevent his conviction for the charged offenses.

Sanders also argues that his convictions were based on uncorroborated accomplice testimony.  But it is well-established that "convictions can be based upon the uncorroborated testimony of an accomplice, if that testimony is not incredible or insubstantial on its face." *Raffone*, 693 F.2d at 1345.  Sanders makes no argument that the accomplice testimony was incredible or insubstantial on its face.  Thus, Sanders has not shown that the district court erred in denying his motion for judgment of acquittal.

## C.

Clark purports to adopt Sanders's sufficiency arguments. But we have recognized that, "given the fact-specific nature of a sufficiency challenge," a defendant generally cannot adopt a co-appellant's sufficiency argument except insofar as it "turns on common facts and their legal import." *United States v. Khoury*, 901 F.2d 948, 963 n.13 (11th Cir. 1990).  So we decline to consider sufficiency issues specific to Clark.  And because Sanders's arguments do not provide grounds for reversal of Sanders's convictions, we likewise affirm Clark's convictions.

## III.

Next, we consider issues arising from trial, including the district court's denial of a mistrial and its asserted failure to instruct the jury on certain matters.

*A.*

Clark argues that the district court abused its discretion by failing to grant a mistrial based on Sanders's outburst during closing arguments. We review a district court's denial of a motion for a mistrial for an abuse of discretion. *United States v. Newsome*, 475 F.3d 1221, 1227 (11th Cir. 2007).

"Typically, a defendant is entitled to a grant of mistrial only upon a showing of substantial prejudice." *United States v. Ettinger*, 344 F.3d 1149, 1161 (11th Cir. 2003); *see Newsome*, 475 F.3d at 1227 ("A mistrial should be granted if the defendant's substantial rights are prejudicially affected."). This occurs when, viewing the trial record as a whole, there is a "reasonable probability" that, but for the challenged remarks or conduct, "the outcome of the trial would have been different." *Newsome*, 475 F.3d at 1227. The trial judge "is in the best position to evaluate the prejudicial effect of a statement or evidence on the jury." *Id.* (quotation marks omitted).

Clark relies on the former Fifth Circuit's decision in *Braswell v. United States*, 200 F.2d 597 (5th Cir. 1952).[3] In *Braswell*, seven defendants were jointly tried for marijuana tax offenses, arising from their participation in a "marihuana party" at a cabin. *Id.* at 598–600. During the trial, two defendants caused a violent altercation, a third defendant was forcibly stopped from swallowing two pills, and the court made comments that some of the defendants were

---

[3] This Court adopted as binding precedent all Fifth Circuit decisions issued by the close of business on September 30, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*).

intoxicated and "under the influence of the marihuana weed." *Id.* at 600–02. Based on these events, our predecessor court held that the defendants were denied a fair trial, highlighting the "highly prejudicial" comments by the judge that some defendants were under the influence of marijuana while standing trial for marijuana offenses. *Id.* at 602.

Clark rightly concedes that Sanders's outburst was not as extreme as the events in *Braswell*. But he argues that a mistrial was still warranted because, in contrast to *Braswell*, the district court here failed to mitigate prejudice with a specific curative instruction.

We agree with Clark that "[w]hen a court gives a direct and explicit curative instruction" about improper testimony or misconduct, "it supports the court's decision not to grant a mistrial by decreasing the possibility of undue prejudice." *United States v. Perez*, 30 F.3d 1407, 1411 (11th Cir. 1994). But "[d]eterminations of the impact of allegedly prejudicial [conduct] upon a jury as well as what curative measures, if any, can be taken to negate the harmful effects, are matters within the sound discretion of the trial judge." *United States v. Badia*, 827 F.2d 1458, 1467 (11th Cir. 1987) (quotation marks omitted). And a trial court does not necessarily abuse its discretion by failing to give a curative instruction. *See United States v. Emmanuel*, 565 F.3d 1324, 1335 (11th Cir. 2009) ("[T]he decision not to give a curative instruction was well within the district court's discretion.").

Here, the district court did not abuse its discretion by not granting a mistrial or giving a curative instruction after Sanders's

outburst during closing arguments. *See Newsome*, 475 F.3d at 1227. The incident was a brief moment in a six-day trial, and it appears to have been resolved without physical altercation or substantial disruption. The court reasonably could have concluded that ruling on the government's motion to strike or issuing "a curative instruction could have drawn unwarranted attention" to the issue, and that the better option was to carry on with closing arguments. *Id.* (quotation marks omitted). Moreover, the jury's mixed verdict—acquitting Clark of five counts and Sanders of one count—"strongly suggests the jury thought critically and individually about the evidence of each defendant's culpability," supporting the denial of a mistrial. *United States v. Stanley*, 739 F.3d 633, 651 (11th Cir. 2014).

The district court was in the best position to assess the prejudicial effect of Sanders interrupting closing arguments and calling the prosecutor a liar, as well as the viability of any curative measures. *See Newsome*, 475 F.3d at 1227; *Badia*, 827 F.2d at 1467. And we see no grounds to conclude that the incident had a substantial influence or impact on the jury's verdict against Clark. *See Newsome*, 475 F.3d at 1227; *Ettinger*, 344 F.3d at 1161. Accordingly, we affirm the denial of a mistrial.

*B.*

Sanders contends that the district court violated his confrontation rights by failing to instruct the jury that Dewise's inculpatory statements to a government agent could be considered by the jury against only Dewise. Clark adopts this argument.

At trial, Sanders sought to exclude testimony by a government agent about admissions Dewise made in custody to law enforcement following his arrest on June 21, 2023. Sanders argued that the use of the codefendant statements at their joint trial was barred by *Bruton v. United States*, 391 U.S. 123 (1968). After hearing argument, the district court directed the agent not to "say anything about . . . his participation with Mr. Sanders." The agent then testified that Dewise admitted he had been involved with methamphetamine for several months in 2022 and had held methamphetamine. No defendant then objected or asked for a limiting instruction.

In *Bruton*, the Supreme Court held that the admission of a confession or statement by a non-testifying defendant which inculpates a codefendant violates the codefendant's Sixth Amendment right to confront a witness. 391 U.S. at 125–26. The Supreme Court has since explained that "the *Bruton* rule applies only to directly accusatory incriminating statements, as distinct from those that do not refer directly to the defendant and become incriminating only when linked with evidence introduced later at trial." *Samia v. United States*, 599 U.S. 635, 652–53 (2023) (cleaned up). In *Samia*, the Court held that the Confrontation Clause "was not violated by the admission of a nontestifying codefendant's confession that did not directly inculpate the defendant and was subject to a proper limiting instruction." *Id.* at 655.

Sanders appears to concede that Dewise's confession did not directly inculpate him and so was not inadmissible under *Bruton*, as

24-12412                    Opinion of the Court                    17

he had argued at trial. *See id.* at 652–55. Rather, Sanders (and Clark, by adoption) now contends that his confrontation rights were violated when the district court, after admitting Dewise's statements at trial, failed to provide a "proper limiting instruction" that jurors could consider the evidence only against Dewise.

In Sanders's view, the absence of a specific limiting instruction meant that the jury was permitted to treat Dewise's confession as evidence against his codefendants, in violation of the Confrontation Clause. *See Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("Ordinarily, a witness whose testimony is introduced at a joint trial is not considered to be a witness 'against' a defendant if the jury is instructed to consider that testimony only against a codefendant."). The government maintains that these are distinct jury-instruction arguments that should be reviewed for plain error only, since no defendant objected at trial to the lack of a limiting instruction.

We need not resolve whether Sanders preserved his current challenge to the failure to give proper limiting instructions when admitting his codefendant's inculpatory statements.[4] A Confrontation Clause violation does not require a new trial if it is harmless beyond a reasonable doubt. *United States v. Holley*, 166 F.4th 139, 148 (11th Cir. 2026) (noting that violations of the Confrontation Clause are subject to the harmless error standard of *Chapman v. Cal-*

---

[4] Nevertheless, Clark did not object to this testimony at all below, so our review as to him is for plain error. *See United States v. Turner*, 474 F.3d 1265, 1275–76 (11th Cir. 2007) (reviewing an alleged *Bruton* error for plain error).

*ifornia*, 386 U.S. 18, 24 (1967)).  In evaluating harmlessness, we consider the strength of the government's case and the prejudicial effect of the statements.  *United States v. Schwartz*, 541 F.3d 1331, 1353–54 (11th Cir. 2008).  The question is whether it's "clear beyond a reasonable doubt that a rational jury would have found the defendant guilty absent the error."  *United States v. Candelario*, 240 F.3d 1300, 1307 (11th Cir. 2001) (quotation marks omitted).

We have held that a *Bruton* error was harmless when other evidence at trial established "the defendant's full participation in the drug conspiracy."  *United States v. Dulcio*, 441 F.3d 1269, 1276 (11th Cir. 2006).  But a *Bruton* error was not harmless when the confession was "the only evidence" linking the defendant to the conspiracy, *id.*, or "the only direct evidence" that established the defendants' knowledge of the conspiracy, *United States v. Doherty*, 233 F.3d 1275, 1281 (11th Cir. 2000).

We agree with Sanders that a confrontation problem arises when a court admits inculpatory statements from a nontestifying codefendant at a joint trial without an instruction that the statements cannot be used to determine the guilt of other defendants. *See Samia*, 599 U.S. at 655.  But we conclude that any error in admitting Dewise's statements without a proper limiting instruction was harmless beyond a reasonable doubt.  *See Holley*, 166 F.4th at 148; *Candelario*, 240 F.3d at 1307.

The prejudicial effect of Dewise's confession was "insignificant."  *Schwartz,* 541 F.3d at 1353–54.  In accordance with the court's ruling on Sanders's objection, the testimony was brief and

implicated only Dewise. There was no implicit reference to Clark, Sanders, or others, or to what Dewise's involvement with or possession of methamphetamine entailed. And, as Sanders notes, the jury heard "other testimony implicating Dewise in [Sanders's] distribution network." The jury also heard overwhelming evidence establishing Sanders's full participation in the drug conspiracy and linking him to the substantive offenses. *See Dulcio*, 441 F.3d at 1276. While the evidence against Clark was less overwhelming, given the jury's acquittal on some counts, Clark fails to show that Dewise's admitted involvement with or possession of methamphetamine had any relevance to the evidence against him.

Finally, we note that the district court otherwise instructed the jury in its final instructions to give "separate consideration to each defendant" and to "determine which evidence in the case applies to a particular defendant and disregard any evidence admitted solely against some other defendant."

Overall, we agree with the government that any error by the district court in failing to give specific limiting instructions when admitting Dewise's limited statements was clearly harmless beyond a reasonable doubt. *See Candelario*, 240 F.3d at 1307.

## C.

Sanders argues that the district court erred by failing to instruct the jury on *Pinkerton* coconspirator liability for the substantive distribution offenses. This challenge was raised for the first time on appeal, so we review for plain error only. *See United States v. House*, 684 F.3d 1173, 1196 (11th Cir. 2012) ("[J]ury instructions

that are challenged for the first time on appeal are reviewed for plain error.").

Sanders's argument is misguided because it presupposes that *Pinkerton* is necessary to sustain the substantive distribution offenses. It's not. In *Raffone*, for example, we found that a defendant's substantive distribution convictions could not "be sustained on a *Pinkerton* theory" because the jury was not instructed on that theory of liability. 693 F.2d at 1346. But we held that the defendant's convictions remained valid because the evidence was "sufficient to support either a constructive possession or an aiding and abetting theory as to each count." *Id.*

Sanders fails to offer any argument that the evidence or instructions were insufficient to convict on a constructive possession or aiding-and-abetting theory of guilt. Nor are we persuaded that the jury's acquittal on Count 4, a gun offense, alone suggests that the jury applied the conspiracy charge in an improper manner, given the presumption that a jury "follow[s] its instructions." *Weeks v. Angelone*, 528 U.S. 225, 234 (2000). Sanders has not shown reversible plain error.

## IV.

Finally, we turn to the sentencing issues. "We review the district court's interpretation of the Sentencing Guidelines de novo and accept its factual findings unless clearly erroneous." *United States v. Barner*, 572 F.3d 1239, 1247 (11th Cir. 2009). We review the legality of a sentence de novo. *United States v. Prouty*, 303 F.3d

1249, 1251 (11th Cir. 2002). "We review preserved sentencing errors for harmless error." *United States v. Green*, 158 F.4th 1347, 1365 (11th Cir. 2025).

We review the imposition of discretionary conditions of supervised release de novo if the defendant "had no opportunity to object at sentencing." *United States v. Rodriguez*, 75 F.4th 1231, 1246 n.5 (11th Cir. 2023). When a defendant has an opportunity to object and "fails to raise an argument before the district court, we review only for plain error." *United States v. Johnson*, 694 F.3d 1192, 1195 (11th Cir. 2012).

### A.

Clark argues that the district court erred at sentencing by (1) treating Count 18 as based on methamphetamine (actual) rather than a mixture of methamphetamine; (2) relying on acquitted conduct; and (3) treating Count 18 as having the same 10-year mandatory minimum as Count 1.

Clark's arguments lack merit. First, he is mistaken that the district court treated Count 18 as involving methamphetamine (actual). The sentencing transcript indicates that the court treated the 27-gram figure charged in Count 18, arising from a traffic stop in Texas, as "meth, not actual," and did not otherwise incorporate that figure into its drug-quantity calculations. Instead, the court found that Clark was responsible for 26 grams of methamphetamine (actual) that were found in a cup inside the shed where he was arrested. That was distinct conduct for which Clark was acquitted.

Clark points out that recent amendments to the Sentencing Guidelines, which took effect after his sentencing, generally prohibit the use of acquitted conduct at sentencing. *See* U.S.S.G. § 1B1.3(c).[5] But we recently held that a district court did not err or violate the Fifth or Sixth Amendments by considering acquitted conduct at sentencing under the then-applicable guidelines. *See United States v. Touray*, 151 F.4th 1317, 1332 (11th Cir. 2025). Clark also contends that the district court abused its discretion by "inconsistent[ly]" attributing acquitted drug conduct to him but not acquitted gun conduct. He does not assert that the government failed to prove the drug amounts by a preponderance of the evidence, however, and the record provides no reason to doubt that the court based its decision on the strength of the evidence. Plus, given Clark's drug-conspiracy conviction, the court reasonably considered Clark's acquitted drug conduct to determine drug quantity under the then-applicable guidelines.

Finally, we agree with the government that it's unnecessary to resolve Clark's claim that the district court erred in sentencing him on Count 18 to a concurrent 120-month term, which was the mandatory minimum sentence required for conviction on Count 1. *See* 21 U.S.C. § 841(a)(1)(A)(viii). The record makes clear

---

[5] As amended, the relevant-conduct guideline now states that "[r]elevant conduct does not include conduct for which the defendant was criminally charged and acquitted in federal court, unless such conduct also establishes, in whole or in part, the instant offense of conviction." U.S.S.G. § 1B1.3(c).

that "the error was harmless because [Clark's] term of imprisonment would not change." *Green*, 158 F.4th at 1373.

Under our concurrent-sentence doctrine, "if a defendant is given concurrent sentences on several counts and the conviction on one count is found to be valid, an appellate court need not consider the validity of the convictions on the other counts." *Id.* at 1374 (quotation marks omitted). The doctrine applies unless the defendant "would suffer adverse collateral consequences from the unreviewed conviction." (quotation marks omitted).

Our decision in *United States v. Bradley*, 644 F.3d 1213 (11th Cir. 2011), shows that the concurrent-sentence doctrine applies in a case like this. There, a defendant was sentenced on three counts to concurrent terms of 240 months, 240 months, and 60 months. *Id.* at 1293. We upheld all three of his convictions and one of his 240-month sentences. *Id.* at 1293–94. As a result, we declined to review his other two sentences, observing that his "ultimate term of imprisonment would not change even were we to find error in the district court," and that he "would suffer no adverse collateral consequences from our refusal to review." *Id.* at 1294.

The concurrent-sentence doctrine applies here for the same reasons as in *Bradley*. Clark's ultimate term of imprisonment would not change even if the court erred in sentencing him on Count 18. *See id.* We have affirmed his convictions on Counts 1 and 18. And Count 1 carried a mandatory minimum term of 10 years. *See* 21 U.S.C. § 841(b)(1)(A)(viii). Moreover, his sentence on Count 18 was within the statutory range for that count. *See* 21

U.S.C. § 841(b)(1)(C).  We also see no indication that Clark would suffer "adverse collateral consequences from our refusal to review."  *Bradley*, 644 F.3d at 1294.

### B.

Clark and Dewise argue that their due-process rights were violated when the district court imposed conditions of supervised release in the written judgment without informing them of those conditions at sentencing.

"District courts have wide latitude to impose discretionary conditions of supervised release."  *United States v. Iron*, 176 F.4th 1275, 1285 (11th Cir. 2026).  "But they must pronounce those conditions at the defendant's sentencing hearing, and they cannot add to the defendant's sentence in a written judgment entered after the sentencing hearing."  *Id.* (quotation marks omitted).  When a court errs in this way, we will vacate the conditions and remand for resentencing.  *Id.*

In *Rodriguez*, we held that "due process principles generally require district courts to pronounce at the sentencing hearing discretionary, but not mandatory, conditions of supervised release." 75 F.4th at 1247.  Courts may satisfy this requirement by referencing a written list of supervised-release conditions.  *Id.* at 1248–49. But "the mere existence of an administrative order recommending certain conditions of supervised release, without in-court adoption of that list by the sentencing court," does not satisfy due process. *Id.* at 1249.

Nonetheless, remand is not required under *Rodriguez* if the defendant "had notice of the conditions of supervised release" at sentencing and an opportunity to object. *United States v. Hayden*, 119 F.4th 832, 838 (11th Cir. 2024). A defendant has an opportunity to object, satisfying due process, where the district court informs the defendant at sentencing that "there [are] standard conditions attached to his [or her] supervised release." *Id.* at 838–39.

Here, the district court erred by imposing discretionary conditions of supervised release in the written judgment that were not pronounced at sentencing. At sentencing, the court listed only the special conditions that it imposed. It did not reference or otherwise identify the standard conditions contained in the written judgment. Although the respective PSRs included a list of standard conditions similar to the conditions eventually imposed in the judgments, the court at sentencing did not reference those conditions or "otherwise indicate that the court was adopting conditions of supervised release beyond those mandated by statute" or already stated. *See Rodriguez*, 75 F.4th at 1249. Plus, as the government concedes, the conditions in the final judgments are not identical to the conditions listed in the PSR. We held in *Rodriguez* that a similar discrepancy was not harmless. *See id.* at n.9.

As in *Rodriguez*, the district court here issued a judgment after the sentencing hearing that added discretionary conditions of supervised release that the court never mentioned during the hearing. *See id.* at 1248–49. We therefore vacate the conditions of

Clark's and Dewise's supervised release and remand for limited re-sentencing. *See Irons*, 176 F.4th at 1285.

## V.

In sum, we **AFFIRM** the convictions of Clark, Dewise, and Sanders. We **AFFIRM** Clark's 120-month sentence. We **VACATE** the conditions of Clark's and Dewise's supervised release, and we **REMAND** for limited resentencing.